<div style="float:right">*New-Haven,*<br>July, 1834.<br>———<br>Hotchkiss<br>*v.*<br>Beach.</div>

If this power is not vested in the commissioners, it has not been seriously doubted but that it rested with the court of probate.

If there be no power to marshal the assets and appropriate them to the debts according to their nature or rank, it is apparent that gross injustice must be done.

There can be no doubt that it must exist in the courts of probate or of chancery, when we find, that the great object of our statutes, is, that estates shall be *closed* or *settled ;* that as it regards insolvent estates, all suits are stopped in the common law-courts, while this settlement is pending ; and when it has not been claimed, upon this trial, that this power does not exist somewhere, nor that relief can only be obtained in a court of chancery, I shall suppose, that it requires no argument to show, that the court of probate had the power it assumed, unless prevented by the previous proceedings of the commissioners. As in my view, those proceedings have no such effect, I am of opinion, that the court of probate came to a correct result ; and that there is no error in the decree of the superior court.

PETERS, J., was absent.

<div style="text-align:right">Judgment reversed.</div>

———◆———

<div style="float:right; border:1px solid; padding:2px">10  243<br>64   38<br>10  243<br>66  455</div>

CHAMBERLAIN and another *against* THOMPSON :

### IN ERROR.

Though the equity of redemption in mortgaged premises may be devised, granted, levied upon and set off in execution ; though the wife of the mortgagor is entitled to dower, and the husband may be tenant by the curtesy ; though the mortgagor in possession may acquire a settlement, may maintain trespass against his mortgagee, and may take the emblements, without being liable to account ; and though the mortgagee has only a chattel interest—a mere pledge for the payment of the debt ; yet still it is true, that upon the execution of the mortgage deed, the legal title vests in the mortgagee, subject to be defeated only on performance of the condition ; and after condition broken, the estate of the mortgagor is forfeited at law, and his only relief is in equity.

*New-Haven,*
*July, 1834.*

Chamberlain
*v.*
Thompson.

A party seeking relief in chancery against one who has the legal title, must shew an equity superior to that of the defendant.

In the creation of a trust, no particular form of words is necessary, but courts of equity will regard the intent, and will so construe the instrument as to carry such intent into effect.

Consequently, wherever an estate in fee is required to satisfy the purposes of the trust, such an estate will pass without words of inheritance.

And this doctrine is applicable to trusts created by deed, as well as by will.

It is in the power and the peculiar province of a court of chancery to correct a mistake in a deed.

And such correction may be made, where the deed is set up by way of defence, as well as where it is the subject of relief by bill.

*A* mortgaged land to *B,* as security for a debt, and *B* assigned the debt and conveyed his interest in the premises to *C ;* after which *A,* being indebted to *C* and others, in a larger amount than he could pay, for the purpose of making a just and equal distribution of his property among his creditors, agreed with *C* to convey to him, and, in pursuance of such agreement, executed a deed, purporting to convey to him, his executors, administrators, and assigns, forever, all the right, title, and interest of *A* in certain goods and real estate, including the mortgaged premises, in trust to sell and dispose of such property, and pay over the avails to all the creditors of *A,* in proportion to their respective debts, under the direction of the court of probate, pursuant to the statute of 1828, *c.* 3. This deed contained no words of inheritance ; but the omission of the word *heirs,* was accidental, owing to the mistake of the drafts-man. Afterwards, *D,* a creditor of *A,* with notice of what had taken place, attached *A's* interest in the premises, and having obtained judgment against *A,* had the execution levied on such interest. On a bill in chancery brought by *D,* against *C,* to redeem, on payment of the mortgage debt, it was held, 1. that from the face of the deed, it was obviously the intention of the parties, that a fee should pass ; as the deed contained words of perpetuity, which, in a devise, would carry a fee, and as the trusts declared were such as to require that a fee should pass, in order to their execution ; 2. that *C* was entitled to have the mistake corrected in his favour, unless there was something in the peculiar character in which the parties stood before the court to prevent this exercise of its ordinary jurisdiction ; 3. that the character of *C* as assignee for the benefit of creditors, did not prevent it, as *C,* in that character, was not a mere volunteer, but a *bona fide* creditor ; 4. that the character of *D,* as attaching creditor, did not prevent it, for as he attached with notice, he stood on no higher ground than a purchaser with like notice ; and consequently, the bill was dismissed.

THIS was a bill in chancery to redeem mortgaged premises.

On the 19th of *November,* 1831, *Ira Merwin,* being seised in fee of the tract of land described in the bill, mortgaged it to *Isaac Townsend,* as security for a promissory note for 350 dollars, made by *Merwin,* dated on that day, and payable to *Townsend,* or order, in two years, with interest ; and on the

27th of *November*, 1832, *Townsend* assigned this note to the defendant, and conveyed to him all his interest in the mortgaged premises ; by virtue of which conveyance, the defendant claimed to have acquired the legal title to such premises in fee simple.

On the 10th of *May*, 1832, the plaintiffs attached *Merwin's* interest in the premises, in an action of book debt ; and on the 14th of the same month, they attached it again, in an action on a promissory note.   In these suits they afterwards obtained judgments, and had their executions duly levied on the property attached.

On the same 10th of *May*, 1832, and before the attachment of the plaintiffs on that day, *Merwin*, being indebted to *Nathaniel F. Clarke*, to the defendant, and to divers other persons, in large sums of money, which he was unable to pay, for the purpose of making a just and equal distribution of his property among his several creditors, agreed with the defendant, to convey to him in fee simple, subject only to the mortgage aforesaid, all his right, title, and interest in the premises, in trust, that the defendant should sell and dispose of the same, and pay over the avails, after deducting all reasonable expenses, to all his creditors, in proportion to their respective debts, under the direction of the court of probate, pursuant to the statute in such case provided, and the surplus, if any, return to him ; and he, with the intention of fulfilling such agreement, procured to be drawn, and executed, a deed, purporting to convey to the defendant all the grantor's right, title and interest in certain goods and real estate, including the aforesaid land mortgaged to *Townsend.*   The *habendum* of this deed was as follows : " *To have and to hold* the said goods and all my interest in said real estate, to him, the said *Isaac Thompson,* his executors, administrators and assigns, forever, in trust, however, and to the intent and purpose, with all convenient speed, to sell and dispose of all said personal and real property, either at public or private sale, as he shall deem most for the interest of my creditors ; and the avails thereof, when sold, first deducting all reasonable expenses, to pay over to all my creditors, in proportion to their respective debts or claims, under the direction of the court of probate for the district of *New-Haven*, and according to the statute in such case made and provided."   The omission to insert words of inheritance in the

Chamberlain
*v.*
Thompson.

*habendum* of this deed, was entirely accidental, and owing to the mistake of the drafts-man. This deed was duly recorded in the town-clerk's office, and also in the office of the court of probate, of which the plaintiffs had notice, and of such omission therein, before the service of their first attachment. Afterwards, on the same 10th of *May*, 1832, *Merwin*, with the intention of confirming to the defendant the title to the premises, in fee simple, subject only to said mortgage, executed and delivered to the defendant a release deed of the premises, in common form. This deed, also, was executed, and notice thereof given to the plaintiffs, before the service of their first attachment; but it was never lodged for record in the office of the court of probate.

The defendant having received said assignment, and undertaken the performance of the trust, gave bond to the court of probate, caused the property assigned to be inventoried and appraised, and procured the appointment of commissioners, who made report to the court of probate of the claims by them allowed against *Merwin*, amounting to 1084 dollars, 42 cents; which, with the necessary charges in the execution of the trust, greatly exceeded the value of the property assigned.

Previous to the institution of this suit, the plaintiffs tendered to the defendant the sum of 396 dollars, in satisfaction of the principal and interest due on said assigned note, and requested him to deliver up to them possession of the premises; but he refused to accept the money, or to comply with their request regarding the premises.

The superior court, having found these facts, dismissed the plaintiffs' bill with costs. On motion in error, by them, the case was brought before this court for revision.

*Hitchcock* and *Seeley*, for the plaintiffs, after premising, that the defendant, as holder of the mortgage, is entitled to all the rights *Townsend* had, and nothing more; that the plaintiffs, by the levy of their executions, took the equity of redemption, unless the defendant's title to it, by virtue of the assignment, be good; and that the only question, therefore, is, whether *Merwin's* deed of assignment, for the benefit of his creditors, was sufficient to convey the equity of redemption;—contended, 1. That that deed, not containing words of inheritance, would pass but a *life* estate to the grantee, unless there

is some circumstance to exempt the present case from the operation of the general rule, that a man cannot have a fee simple, by grant, without words of inheritance in the deed. It may be contended, that this technical rule, which governs the legal estate, does not apply to the grant of an equity of redemption, being an equitable title only. There is no such distinction in any book; and it is opposed both to principle and authority. Courts of law and courts of equity put the same construction upon the same language; and they equally refuse to look out of the deed for its meaning. In the case of *Bagshaw* v. *Spencer,* 2 *Atk.* 573. Lord *Hardwicke* says: " I shall take it as a settled maxim, that estates are to be governed by the same rules in law and in equity ; and technical expressions at law are to receive the same interpretation." See also *Watts* & al. v. *Ball* & al. 1 *P. Wms.* 108, 9. *Massenburgh* v. *Ash,* 1 *Vern.* 234, 5. *Doe* d. *Mussell* v. *Morgan,* 3 *Term Rep.* 763. 765. In the view of a court of equity, the equity of redemption is the *real* title : it is the fee. The mortgagor, even after the condition is forfeited, is the owner of the land ; and the mortgagee's interest is mere personal assets. The cases are uniform to this effect. *Casborne* v. *Scarfe* & al. 1 *Atk.* 605. *Winn* v. *Littleton,* 1 *Vern.* 3. *Strode* v. *Lady Russell,* 2 *Vern.* 625. *Cholmondeley* v. *Clinton, Jac. & Walk.* 174. 1 *Pow. Mort.* 250. *Runyan* v. *Mersereau,* 11 *Johns. Rep.* 534. *Rockwell* & al. v. *Bradley,* 2 *Conn. Rep.* 1. *Wakeman* & al. v. *Banks,* 2 *Conn. Rep.* 445. *Barkhamsted* v. *Farmington,* 2 *Conn. Rep.* 600. *Leonard* v. *Bosworth,* 4 *Conn. Rep.* 421. *Toby* v. *Reed,* 9 *Conn. Rep.* 216. 224. The case of *Fisher* & al. v. *Fields,* 10 *Johns. Rep.* 495. turned upon a principle not applicable to the present case ; for there, the person, in whose name the legal title stood, was held to be a trustee for another, and, as such, was required to convey the legal estate to the *cestuy que trust.* The principle of that class of cases merely involves the acknowledged power of a court of equity to decree the specific performance of contracts.

2. It is contended for the defendant, that the omission to insert words of inheritance in the deed being *by mistake,* a court of equity will correct that mistake, as against an attaching creditor, with notice, on a bill brought for that purpose; and that, in the way of defence, the equity of the plaintiffs' bill

*New-Haven,*
*July, 1834.*

*Chamberlain*
*v.*
*Thompson.*

may be rebutted, by setting up the same matter. The question, then, resolves itself into this; whether the present defendant, on a bill brought by him for that purpose, would be entitled to correct this mistake? And whether the defendant, as plaintiff in such supposed bill, would have more equity to take the equitable fee from the present plaintiffs, than they have to retain it? In the case of *Swift* & al. v. *Thompson,* 9 *Conn. Rep.* 63. the question was raised, whether an assignee for the benefit of creditors, was to be deemed a *bona fide* purchaser; and the members of the court differed upon the question. *Daggett,* J., who gave the opinion of the court, held, that the mortgage, in this case, not being followed by possession, was utterly void, and that it would be so, even against a volunteer; and in this view, it was clearly immaterial whether an assignee for the benefit of creditors, was to be deemed a *bona fide* purchaser or not. The authorities cited by *Williams,* J., in that case, for the contrary position, are still left in their full force. The books are all one way on this point. *Garrard* v. Lord *Lauderdale,* 1 *Sim.* 1. *Walwyn* v. *Coutts,* 3 *Meriv.* 707. *S. C.* 1 *Sim.* 14. *Sug. Vend.* 457., and the cases cited in *Swift* & al. v. *Thompson,* 9 *Conn. Rep.* 63. The defendant here is a mere naked trustee, without any sort of interest; he is accountable only for what he receives. His character of trustee excludes the idea of his being a purchaser; and although he alleges in his answer, that he was himself a creditor of the grantor, it is obvious that in his character of creditor, he can make no claim under the deed: he must stand or fall simply as trustee. The *agreement* was, to make the defendant a *trustee;* and such an agreement is merely voluntary, giving the defendant neither a legal nor an equitable claim to a conveyance from the insolvent. No action could be sustained upon it; nor could a bill for a specific performance. 1 *Ves.* 53, 4. 2 *Freem.* 217. 4 *Cruise's Dig.* 128. So far as the agreement has been *executed* by the party, it will be established; but so far as it is executory, there is no remedy. Notice of such an agreement was, therefore, wholly immaterial.

3. But conceding that a trustee for the benefit of creditors, is to be treated, in all respects, as a *bona fide* purchaser, the question arises, whether a court of equity will interfere to correct a mistake, in a case like the present. A court of chancery considers that as done, which a party, upon sufficient considera-

tion, has stipulated to do; and if he refuses, it will deal with his conscience and compel him. Upon a contract to sell, the vendor becomes a trustee for the vendee; and the man who purchases, knowing of the trust, becomes himself a trustee, and is said to be *particeps criminis*. 2 *Fonb. Eq.* 443. & seq. A second purchaser is treated, in all the books, as guilty of a fraud. 4 *Kent's Com.* 164. The present case does not fall within that principle. Here is a race among creditors to get security. The attaching creditor cannot be charged with acting corruptly. There is no combination; nothing unconscientious. It is not a case for the interference of equity. *Carter* v. *Champion*, 8 *Conn. Rep.* 550. Our law of attachment is coeval with the settlement of the country; and while the jurisdiction of a court of equity to rectify a mistake in a deed, has always been recognized, the principle has never been extended to a case like the present, although cases calling for the application of the rule, if any such existed, must have been of frequent occurrence. *Pendleton* v. *Button*, 3 *Conn. Rep.* 406. 411. *Watson* & al. v. *Wells*, 5 *Conn. Rep.* 468. 471.

With respect to the second deed from *Merwin* to the defendant, it will not aid the defendant's title, because it has not been lodged in the probate office for record, as the statute requires it should be. It is, by force of the statute, utterly void as against creditors.

*R. S. Baldwin* and *W. B. Bristol*, for the defendant, remarked, *in limine*, That as the plaintiffs had notice of *Merwin's* intention to convey an estate in fee, and of both the deeds mentioned in the record, previous to the service of either of their attachments; and as they are now seeking to call the *legal* estate out of the defendant's hands; it is incumbent upon them to shew a *superior equity*. If they can only shew an equity equal or inferior to the defendant's, they cannot redeem. *Carter* v. *Champion* & al. 8 *Conn. Rep.* 550. 559. Again; the plaintiffs are attaching creditors, with notice of a previous conveyance, seeking to call the estate out of the hands of a previous *bona fide* purchaser; for such is the character of an assignee for the benefit of creditors. *Swift* & al. v. *Thompson*, 9 *Conn. Rep.* 64. 69.

The counsel for the defendant then contended, 1. That it was competent to a court of equity to correct a mistake in a

New-Haven,
July, 1834.

Chamberlain
*v.*
Thompson.

written instrument. Fraud, accident and *mistake* are subjects, which, of all others, are most incontestibly within its jurisdiction. And the doctrine in question has been repeatedly recognized in *Connecticut. Washburn v. Merrills,* 1 *Day,* 139. *Peters* & al. v. *Goodrich,* 3 *Conn. Rep.* 146. 150. *Avery* v. *Chappel,* 6 *Conn. Rep.* 274., and the cases cited *ibid.*

2. That such mistake may be shown, by setting it up by way of *defence,* as well as by making it a ground of relief, by bill. 2 *Johns. Ch. Rep.* 596. per *Kent,* C. 6 *Conn. Rep.* 274. per *Daggett,* J.

3. That the record in this case shewing a plain intention to convey an estate in fee, and a mistake in the instrument of conveyance, the court will correct the mistake, and decree that a fee shall pass according to the intention. *Fisher* v. *Fields,* 10 *Johns. Rep.* 505. *Higinbotham* v. *Burnet* & al. 5 *Johns. Ch. Rep.* 184. 187.

4. That even if the assignment conveyed only a *life* estate, the plaintiffs cannot redeem. The deed was effectual to convey that estate. *Stat. of* 1828. *c.* 3. *p.* 182. 10 *Johns. Rep.* 513. 5 *Johns. Ch. Rep.* 187.

5. That the deed of confirmation, referring to the assignment, and taken in connexion with the actual notice which the plaintiffs had of both deeds, conveyed a fee simple. *Priest* v. *Rice,* 1 *Pick.* 164. 168. *Carter* v. *Champion* & al. 8 *Conn. Rep.* 554. 1 *Sw. Dig.* 129. 130. The object of the probate record is to give notice; and the conveyance is complete, so far as the party with notice is concerned, without the record.

BISSELL, J. The plaintiffs in error preferred their bill to the superior court, praying to redeem the premises in question, upon payment of the sum due on *Townsend's* mortgage; and the question is, whether, upon the facts disclosed in the bill and answer, they are entitled to the relief sought.

It is admitted, on the face of the bill, that the strict legal title is in the defendant; and that the only relief of the plaintiffs is in equity. At law, they have no remedy. Now, there is no more familiar principle, than that the plaintiffs are bound to show an equity superior to that of the defendant, before they can successfully claim the interposition of a court of chancery. If their equity be inferior, or equal only to his, a court of equity

will leave the parties where it finds them ; and the legal title must prevail.

An effort was, indeed, made at the bar, to meet this view of the case, by assuming the position, that, in the view of a court of chancery, the equity of redemption in mortgaged premises, is the fee. It is said, that this has ever been considered as an estate in the land ; that it may be devised, granted, levied upon, and set off on execution ; that the wife of the mortgagor is entitled to dower ; that the husband may be tenant by the curtesy ; that the mortgagor, in possession, may acquire a settlement ; that he may maintain trespass against his mortgagee ; and may take the emblements, without being liable to account ; and that the mortgagee has only a chattel interest,—a mere pledge for the payment of his debt.

All this is very familiar doctrine. Yet, still it is true, that upon the execution of the mortgage deed, the *legal* title vests in the mortgagee, subject to be defeated only on performance of the condition ; and that he may bring ejectment, and oust the mortgagor of possession, even before the expiration of the law day. 4 *Kent's Com.* 148. *Rockwell* v. *Bradley,* 2 *Conn. Rep.* 1. *Wakeman* v. *Banks,* 2 *Conn. Rep.* 445. *Birch* v. *Wright,* 1 *Term Rep.* 378. *Erskine* v. *Townsend,* 2 *Mass. Rep.* 493. 2 *Swift's Dig.* 169.

And it is equally true, that after condition broken, the estate of the mortgagor is forfeited at law ; and his only relief is in equity. 2 *Swift's Dig.* 164. 169. 178.

And whenever he brings a bill to redeem, the rule that he who seeks equity must first do equity, will be applied. And hence it is, that if the mortgagor owe a collateral debt to the mortgagee, he will not be entitled to redeem, without paying such debt, as well as that secured by the mortgage. *Scripture* v. *Johnson,* 3 *Conn. Rep.* 211. 1 *Mad.* 424. 2 *Swift's Dig.* 186. We are, therefore, to inquire what is equitable between these parties ; and whether, upon any principle, the plaintiffs are entitled to redeem, on payment of the amount due on *Townsend's* mortgage. Their claims to do so have been urged on the following grounds :

1. That the first deed from *Merwin* to the defendant, not containing any words of inheritance, conveyed only a life estate ; the construction of the deed being the same in a court of chancery, as in a court of law.

2. That although it is found, that it was the intention to convey a fee, and words of inheritance were omitted through mistake ; yet under the circumstances of this case, a court of chancery will not correct the mistake.

3. That nothing passed to the defendant, in virtue of the second deed, it not having been recorded on the records of the court of probate.

1. The inquiry arises, what estate did the defendant take, in equity, under the first deed ?

And here it is to be remarked, that this is a deed in trust, for the benefit of the creditors of the grantor ; and looking only upon the face of the deed, the intention of the parties is most manifest. It was, unquestionably, their intention, that the fee should be conveyed. For although the word *heirs* is omitted, yet the deed contains words of perpetuity, which, in a devise, would carry the fee.

The conveyance is to *Thompson*, his administrators and assigns, *forever*. He is empowered to sell. The trusts are declared ; and are, obviously, such as to require that a fee should pass, in order to their execution.

Now, it is certainly well settled, that no particular form of words is required, in the creation of a trust. Courts of equity regard the intent, and will so construe the instrument as to carry *that* into effect. 2 *Fonb. Eq.* 36. 3 *Ves.* jun. 9. 4 *Kent's Com.* 298.

And wherever an estate in fee is required, in order to satisfy the purposes of the trust, such an estate will pass, without the word *heirs*. This principle is fully asserted, by *Kent*, Ch. J., in giving the opinion of the court, in the case of *Fisher* v. *Fields*, 10 *Johns. Rep.* 495. He says : " A trust is merely what a use was, before the statute of uses. It is an interest resting in conscience and equity ; and the same rules apply to trusts in chancery now, which were formerly applied to uses. And in exercising its jurisdiction over executory trusts, the court of chancery is not bound by the technical rules of law, but takes a wider range in favour of the intent of the party." And again, in his Commentaries, the same learned jurist remarks : " An assignment or conveyance of an interest in trust, will carry a fee, without words of limitation, where the intent is manifest." 4 *Kent's Com.* 298.

In *Bagshaw* v. *Spencer*, 2 *Atk.* 577. which was the case of a devise in trust, Lord *Hardwicke* says : " The devise to sell would have carried the fee, if the word *heirs* had not been mentioned." And he further says, in *Villiers* v. *Villiers*, 2 *Atk.* 72. " If land be given to a man without the word *heirs*, and a trust be declared of that estate, and it can be satisfied by no other way, but by the *cestuy que trust's* taking an inheritance, it has been construed that a fee passes to him even without the word heirs." See also *Shaw* v. *Wright*, 1 *Eq. Ca. Abr.* 176. *Gibson* v. *Montfort*, 1 *Ves.* 485. *Oates* d. *Markham*, v. *Cooke*, 3 *Burr.* 1684. 1686. 1 *Cruise's Dig.* 307.

It was, however, said, at the bar, that the cases relied upon arose under wills ; and that the rule of construction there adopted is not applicable to the case of a deed. Can it make any possible difference, in point of principle, whether the trusts be declared by a deed or a will ? I have been unable to find an intimation of such a distinction in any book of authority. The language of chancellor *Kent*, already cited, strongly implies the contrary. " *An assignment or conveyance* will carry the fee," &c. See also, 1 *Cruise's Dig.* 307. Besides, it will be borne in mind, that the case of *Fisher* v. *Fields*, already cited, and also the case of *Higinbotham* v. *Burnet* & al. 5 *Johns. Ch. Rep.* 184. 186. and in both of which the doctrine is fully recognized, arose under deeds ; and in the last case, a legal conveyance was decreed. See also *Wadsworth* v. *Wendell*, 5 *Johns. Ch. Rep.* 224.

In view, then, of these authorities, it may well be questioned, whether this first position, and upon which the plaintiffs' entire case rests, has been sustained.

But admitting it to be so : the case finds, that it was the intention of *Merwin* to convey a fee ; that such was the agreement between the parties ; and that the omission of words of limitation was entirely accidental, and owing to the mistake of the scrivener, who drew the deed. It is further found, that the plaintiffs in error had actual notice of these facts, previous to the levy of their attachments. Upon this state of facts the question arises,

2. Whether a court of chancery will correct this mistake ?

That it is not only in the power, but that it is the peculiar province of a court of chancery to correct mistakes in a deed, and mistakes of this character too, is too well settled to admit

of a question, or to require that authorities should be cited in proof. It has not, indeed, been denied in the argument. Is there any thing in the character in which the parties stand before the court, that should prevent the exercise of this very ordinary jurisdiction of a court of chancery?

It is contended that there is. And first, it is said, that the deed to the defendant is without consideration; that he is a mere volunteer; and *therefore,* not entitled to have the mistake corrected *in his favour.*

Unless the case of *Swift* v. *Thompson,* 9 *Conn. Rep.* 69. is to be overruled, it certainly puts at rest this claim of the plaintiffs. Not only is the doctrine asserted, by the learned Judge, who pronounced the opinion in that case, but it was expressly decided, that grantees, standing in the condition of this defendant, were both *bona fide* purchasers and creditors. I will only remark further, that the case at bar is stronger than the case of *Swift* v. *Thompson;* for it is found, that the defendant was a creditor of *Merwin;* and the object of the conveyance was, to satisfy his debt in common with others.

Suppose, then, that *Merwin* was before this court, seeking to enforce the claim, which is urged by these plaintiffs: could he be heard? This has not been pretended. But there being no claim that this conveyance was fraudulent, and the plaintiffs having levied their attachment, with full notice of all the facts; are they in a better condition? Do they not stand in his place? And can they enforce a demand, which he could not have enforced? Had they taken a conveyance from *Merwin,* with notice of all the facts disclosed in the answer, where would have been their equity? Where their claims for the interposition of a court of chancery, in their favour? But it is said,

Secondly, that they are attaching creditors; and therefore, this deed is not to be reformed *as against them.*

It is said, there is a distinction between the case of a mortgagee, with notice of a prior defective conveyance, and that of an attaching creditor, with like notice.

I confess I am unable to see on what ground this distinction rests. I know it was taken, and urged upon us, in the case of *Carter* v. *Champion,* 8 *Conn. Rep.* 559. But the doctrine did not, even impliedly, receive the sanction of this court. And in the case of *Priest* v. *Rice,* 1 *Pick.* 164. it was decided, that a creditor, knowing of a conveyance of land made by his

debtor, for a valuable consideration, which is not registered, cannot, by an attachment and levy upon the land, obtain a title against the grantee.

The same principle was decided in *Farnsworth* v. *Childs*, 4 *Mass. Rep.* 641. in *Davis* v. *Blunt*, 6 *Mass. Rep.* 487. and in *Prescott* v. *Heard*, 10 *Mass. Rep.* 60. In the last case, *Sewall*, Ch. J. remarks, that the case of an attachment or execution is put upon the same footing as second purchasers ; and that the reason is the same in both cases.

It is true, that in all these cases, the deeds were valid, and passed the legal title ; but they were unrecorded ; and therefore, ineffectual against a subsequent attaching creditor, without notice. I will not say, that it is in the power of a court of law to give validity to a conveyance defectively executed ; or that in the scramble among creditors, such a conveyance must not give place to an attachment levied according to law, although there may have been notice. But where a creditor levies his attachment, with notice that there is a prior conveyance to a *bona fide* purchaser, which, although defective, in equity conveys the fee, and is obliged to come into a court of chancery, to give efficacy to his own levy ; I have yet to learn, that he is to stand on any better ground than a purchaser with notice ; or that the great and fundamental principles of equity are to be set aside, in his favour, because he comes in the character of an attaching creditor.

This view of the case renders it unnecessary to determine the effect of the second deed.

I am of opinion, that there is nothing erroneous in the decree of the superior court.

The other Judges were of the same opinion, except PETERS, J., who was absent.

<div align="center">Decree affirmed.</div>